VEHLING *v.* STATE OF INDIANA.

[No. 26,187. Filed May 25, 1935. Rehearing denied
April 8, 1936.]

*Fred E. Barrett, Eph Inman* and *Thomas D. McGee,* for appellant.

*James M. Ogden,* Attorney-General, and *V. Ed Funk,* Deputy Attorney-General, for appellee.

᾽TREANOR, J.—Appellant was convicted upon an affidavit in four counts charging that he, as coroner of Marion County, solicited a bribe to influence him in his official action as such coroner. Errors assigned by appellant, and relied upon for reversal, present for review the action of the trial court in overruling (1) appellant's motion to quash the affidavit, (2) his plea in abatement, (3) his motion in arrest of judgment, and (4) motion for new trial.

In support of his motion to quash appellant urges that the affidavit "lacked certainty" and "failed to state the

facts constituting the offense." The offense defined by the statute[1] is clear and easily comprehended. If any person holding an office of trust or profit under the laws of the state solicits money, beneficial promise, or valuable thing "to influence him with respect to his official duty, or to influence his action, vote, opinion or judgment in any matter pending or that might legally come before him" such person commits the offense declared against by the statute, which is commonly referred to as soliciting a bribe. The offense is complete when the officer has solicited any money, beneficial promise or valuable thing to influence his official action and it is not material whether he is in fact influenced or induced to act in the manner indicated by his solicitation. This has been recognized by courts of other jurisdictions as indicated by the following excerpts quoted in 52 A. L. R. 816, 818:

> "At common law, bribery is a grave and serious offense against public justice; and the attempt or offer to bribe is likewise criminal. . . . Why is the mere unsuccessful attempt to bribe criminal? . . . It tends to corrupt, and, as the law abhors the least tendency to corruption, it punishes the act which is calculated to debase, and which may affect prejudicially the morals of the community. . . . As we have seen, the mere offer to bribe, though it may be rejected, is an offense. . . . The distinction between an offer to bribe and the proposal to receive one is exceedingly nice. The difference is wholly ideal. If one man attempt to bribe an officer, and influence him, to his own degradation and the detriment of the public, and fail in his purpose, is he

1. The statute under which this prosecution was brought, insofar as the same is applicable to the instant case, reads as follows: "Whoever . . . being . . . a person holding any office of trust or profit under the laws of this state . . . solicits . . . any such money, promise (to any act beneficial to any such person) or valuable thing, to influence him with respect to this official duty, or to influence his action, vote, opinion or judgment in any matter pending or that might legally come before him, shall, on conviction, be imprisoned," etc. §10-601, Burns' Ind. St. Ann. 1933, §2579, Burns' Ann. Ind. St. 1926, §2623, Baldwin's Ind. Stat. Ann. 1934, Acts 1905, ch. 169, p. 584, §477.

more guilty than the officer who is willing to make sale of his integrity, debase himself, and who solicits to be purchased to induce a discharge of his duties? The prejudicial effects upon society are, at least, as great in the one case as in the other; the tendency to corruption is as potent; and when the officer makes the proposal, he is not only degraded, but the public service suffers thereby. . . . It is an offense more serious and corrupting in its tendencies than an ineffectual attempt to bribe." *Walsh* v. *People* (1872), 65 Ill. 58, 16 Am. Rep. 569.

"To constitute the offense under this statute of asking for a bribe, it is not necessary that the party solicited shall consent to give it. All that is necessary is that the party asking the bribe is ready and willing to enter into a corrupt agreement or understanding to accept it." *State* v. *Durnam* (1898), 73 Minn. 150, 75 N. W. 1127.

The affidavit averred appellant's official position; that, as coroner, he viewed the bodies of certain persons and made inquiry as to the manner in which they came to their death; and further averred, by separate counts, that he "did then and there unlawfully, feloniously and corruptly solicit" money, a promise, and a valuable thing, respectively, "with the corrupt purpose then and there to influence the official action" of appellant and to induce him "to render verdicts of accidental death." The affidavit is sufficient to withstand appellant's motion to quash for uncertainty.

Appellant was prosecuted by affidavit as authorized by §4, ch. 132[2] of the Acts of 1927. Appellant contends that this statutory provision which authorizes the prosecution of offenses by affidavit in circuit and criminal courts, while a grand jury is in session, is a special law and that it violates §§22 and 23,

---

2. "All public offenses, except treason and murder, may be prosecuted in the circuit or criminal court, by affidavit filed in term time, in all cases except when a prosecution by indictment or affidavit for the same offense is pending at the time of the filing of such affidavit . . ." §2150, Burns, etc., 1929, §9-908, Burns, etc., 1933, §2131, Baldwin's 1934, Acts 1927, ch. 132, §4, p. 411.

Art. IV, of the Indiana Constitution.[3] Appellant's conclusion therefrom is that the instant prosecution was unlawful and that his plea in abatement and motion in arrest of judgment should have been sustained.

The fact that prosecutions for all felonies may be commenced in circuit and criminal courts by indictment does not render "local or special" a law which permits prosecutions for all offenses except murder and treason also to be commenced by affidavit. The act gives a choice between two methods of initiating criminal prosecutions, but it operates uniformly and generally throughout the state. The objection made by appellant against the present affidavit-statute was made against the original statute enacted in 1879.[4] The objection was held to be without merit in *Jones* v. *State* (1881), 74 Ind. 249, and *Heanley* v. *State* (1881), 74 Ind. 99; and these cases overruled the earlier case of *Reed* v. *State* (1859), 12 Ind. 641, upon which appellant relies.

The trial court did not err in overruling appellant's plea in abatement and his motion in arrest of judgment.

Under the assignment that the court erred in overruling his motion for new trial appellant presents the following:

(1) The verdict was not sustained by sufficient evidence.

(2) The verdict was contrary to law.

(3) Error in refusing to give appellant's tendered instructions Nos. I-a, V, VI, VIII, IX, X, XI and XIII.

(4) Error in giving instructions Nos. 4, 5, 13, 14 and 15 upon the court's own motion.

---

3. "The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . Regulating the practice in courts of justice." §22, Art. IV, Ind. Const.

"In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state." §23, Art. IV, Ind. Const.

4. Acts 1879, ch. LII, p. 143.

(5) Error in refusing to grant a change of venue from the county.

In support of his contention that the verdict was contrary to law and that error was committed by the court in refusing to give, and in giving the instructions referred to in (3) and (4), *supra,* respectively, appellant insists that since the evidence shows that he had decided upon his verdict prior to the time when the alleged solicitation took place and had reduced his decision to writing, such solicitation could not have constituted an offense, because he then could not have been influenced or induced to render a verdict by the thing solicited. As above pointed out, it is not a necessary element of the offense here charged that the person soliciting the money, promise or valuable thing shall in fact be influenced in his official conduct as a result of the solicitation. It is only essential that there shall have been an offer made by the officer to be influenced by money, a beneficial promise or a valuable thing, in his official action in a matter pending or that might legally come before him. So long as the proposal deals with a "matter" that "is pending or might legally come before him" it is immaterial that he would be unable to take the particular action which, by his solicitation, he proposes to take. So in the instant case it is not material whether appellant did in fact change, or legally could have changed, his verdict, if the "matter" was still pending at the time of the alleged solicitation.

There can be no doubt that the "matter" was pending at the time of the alleged solicitation. The statute makes it the duty of the coroner not only to "draw up his verdict . . . and sign the same" but also to "make a report . . . which report, with said verdict so found by him, shall be by him filed in the office of the clerk of the circuit court of the county in which said body is found."[5] So long as any of the duties

imposed upon an officer in a particular matter remains unperformed, the "matter" is "pending" within the meaning of §10-601, Burns, etc. 1933, *supra*. It is not contended in the instant case that appellant's verdict or report had been filed "in the office of the clerk of the circuit court" at the time of the alleged solicitation of a bribe and until that was done the proceedings had not been terminated and the "matter" was still pending before appellant as coroner.[5] The court's instructions correctly stated the law and it was not error to refuse instructions tendered by the defendant which were based upon an erroneous conception of the law.

Appellant objects to the admission in evidence of certain exhibits. These were admitted as constituting the record of the coroner's inquest upon the deaths under investigation and the coroner's verdict thereon. The objection to their admission was the

5. "The coroner, having viewed the body, heard the evidence, and made all necessary inquiry, shall draw up his verdict upon the death under consideration, in writing, and sign the same with his name." §49-2908, Burns, etc., 1933, §5442, Baldwin's 1934, 2 R. S. 1852, ch. 7, §10, p. 13; Acts 1879 Spec. Sess., ch. 28, §3, p. 105.

"The coroner shall also make a report, in writing, giving therein a particular and minute description of the deceased person, together with his name (if the same can be ascertained), and the amount of money and other valuables found with the dead body; which report, with said verdict so found by him, shall be by him filed in the office of the clerk of the circuit court of the county in which said body is found, immediately after his inquest is completed. . . ." §49-2909, Burns, etc., 1933, §5443, Baldwin's 1934, 2 R. S. 1852, *supra*, §11, Acts 1879 Spec. Sess., *supra*, §4.

6. "Our statute gives the coroner no power to hold more than one inquest. When he is informed that the dead body of any person supposed to have come to his death by violence or casualty is within his county, it is his duty to immediately proceed to inquire, upon view of the body, the manner of such death; and when he has made such inquiry and has made and signed his verdict, it is his further duty to file such verdict in the office of the clerk of the county, and when that is done the whole proceeding is at an end. . . . He has no power to recall a verdict that he has filed with the clerk, and he has no power to set it aside indirectly by holding a second inquest, and filing another verdict. We are not deciding whether there is any method by which such a verdict could be set aside, and another inquest held, as that question is not before us." *Board of Commissioners of Fountain County* v. *Van Cleave* (1898), 19 Ind. App. 643, 647, 49 N. E. 978.

absence of any showing "that it was ever signed by the defendant, or read by him, and that it was filed by Miss Sartor without any knowledge or direction of the defendant." These exhibits are required to be filed in the office of the clerk of the circuit court. The purpose of admission in evidence was to establish that the filing of the verdicts, as required by statute, had not been completed at the time of the alleged solicitation of a bribe. Though not signed by appellant, as required by statute, it is clear that the verdicts were signed and filed by the coroner's clerk in accordance with the practice regularly followed by appellant in conducting the office of coroner. It was not error to receive the exhibits in evidence.

It is urged that the court erred in refusing to grant a change of venue from the county upon the affidavits and motion tendered by appellant. The ground relied upon was that he could not receive a fair trial "owing to the excitement and prejudice against the defendant . . . and against the defendant in this cause of defense" in Marion County. One of the affidavits was accompanied by newspaper excerpts dealing with the grand jury investigation and indictment of appellant. The affidavit contained the following allegation:

"The affiant says that from his conversation with a large number of people, from his familiarity with the news stories published in the newspapers and from the investigation made by him, he is convinced that there is an excitement and prejudice against his cause of defense which renders it impossible, in this affiant's opinion, based on the facts and circumstances herein alleged, for said defendant to have a fair and impartial trial in said Marion County."

The showing" thus made was controverted by counter-affidavits of eight persons filed by the State. Each affiant alleged, in part, "that from his conversation with other persons, citizens and residents of said Marion County and from comment which he has heard any person make concerning said cause, he believes the fact to be, and therefore says, that there is no prejudice existing in said Marion County, against said Fred W. Vehling and his defense in said cause and in the opinion of this affiant said Fred W. Vehling can have a fair and impartial trial of said cause in said Marion County."

The statute provides that "when affidavits for a change of venue are founded upon excitement or prejudice in the county against the defendant, the court, in all cases not punishable by death, may, in its discretion, . . . grant a change of venue to the most convenient county."[8] It is well settled that the trial court's action under the statute above quoted will not be disturbed unless a clear abuse of discretion is shown. Appellant's motion, with its supporting affidavits and exhibits, and the State's counter-affidavits presented a situation calling for the exercise of the trial court's discretion. No abuse of that discretion appearing, the action of the trial court will not be disturbed.

There was no error in overruling appellant's motion for new trial.

Judgment affirmed.

---

7. "The defendant may show to the court, by affidavit, that he believes that he can not receive a fair trial, owing to the . . . excitement or prejudice against the defendant in the county . . . and demand to be tried by disinterested triers. . . ." §9-1301, Burns, etc., 1933, §2222, Baldwin's 1934, Acts 1927, ch. 132, §10, p. 411.

8. §9-1305, Burns, etc., 1933, §2226, Baldwin's 1934, Acts 1905, ch. 169, §207, p. 584.